ROWLAND R. HAZARD & another *vs.* HORACE H. DAY.

Telegrams signed by a person and relating to a contract, but not mentioning the subject matter thereof, are not sufficient to take the contract out of the statute of frauds; nor can this deficiency be supplied by referring, for a description of the subject matter, to a written instrument subsequently signed by the same person, and designed to put in form the same contract, if such written instrument is void as a contract by reason of having been executed in violation of the statutes for the observance of the Lord's day.

Articles of agreement providing that A., the owner of an estate in Rhode Island, in consideration of two thousand dollars to him paid, should sell the estate to B. for a certain price, which price B. should pay, were signed by A. and intrusted to his real estate brokers who had negotiated the sale, to deliver. The brokers accordingly on a Sunday delivered to B. in Rhode Island the copy signed by A., and procured the signature of B. to a duplicate thereof, and received from B. a check for two thousand dollars, payable in New York. On Monday B. gave notice to the brokers that he should not complete the contract, and should stop payment of the check, which he did. The judge of the superior court, before whom an action brought to recover the amount of the check was tried, without a jury, found that the acts done on Sunday were in violation of the statute of Rhode Island prohibiting the doing of any labor, business or work of one's ordinary calling on that day, and that therefore the action could not be maintained. *Held,* that on these facts this court would not reverse that finding.

CONTRACT brought upon a check for $2000, dated New York, July 3, 1865, payable to Hazard & Apthorp (the plaintiffs) or

ordei, payment of which was refused on presentation. Two of the grounds set up in defence were that the note was obtained by fraudulent representations as to the real estate hereinafter referred to, and that it was void by reason of having been given on the Lord's day. The plaintiffs were afterwards allowed to file an additional count, for $5000, amount of cash payable under contract of sale of the Chace estate, to which the same grounds of defence were set up.

At the trial in the superior court, before *Ames*, J., without a jury, the defendant, having admitted facts sufficient to constitute a *primâ facie* case, testified that, being in Newport, Rhode Island, in the summer of 1865, his attention was called to an estate which the plaintiffs, as real estate agents, had for sale; that on visiting Hazard, one of the plaintiffs, he obtained certain representations as to the value of the land and cost of the building; and that he soon after went to New York, and while there had a correspondence with the plaintiffs, both by telegraph and mail. This correspondence was put into the case, and was as follows, the dates being from June 27th to July 1st 1865:

" Newport, 1865. To Horace H. Day, 23 Courtland. Owners telegraph, can you make cash seven thousand? Reply by telegraph. Hazard & Apthorp."

" New York, 27th, 1865. To Hazard & Apthorp. Five all can conveniently do now; two more February next. H. H. Day."

" Newport, 1865. To Horace H. Day, Courtland St. You have it. Contracts to-night by mail. Hazard & Apthorp."

" New York, 28th, 1865. To Hazard & Apthorp, House Agents. I withdraw my February offer, and stand on the original, which I withdraw Thursday night if not accepted before. I write you mail. Horace H. Day."

" Newport, R. I., June 28, 1865. My dear Sir: At ten this A. M. we telegraphed you that you had the Chace house, and 1 so informed Mrs. Day, who, by the way, went immediately to examine the premises, and has had them all opened and aired. At 11 o'clock I had your despatch withdrawing the offer of $2000 in February. On examination of our authority, we

believed it full, and therefore have made the contracts, as required by you; one inclosed, the other having been forwarded to Boston, and will be returned to-night.

"Please sign the inclosed contract, before a witness, and forward it, together with your check for $2000, to Mrs. Day. We will have the duplicate properly signed, witnessed and stamped, and deliver it to her, in exchange. You can take immediate possession; but the payment of $3000 (three thousand) will not be required for a week or two, as one fifth interest cannot be conveyed without the order of the orphans' court, which is in progress, but will not be obtained in less than a week, or more than two. We will wait upon Mrs. Day on the evening of the 29th. Very respectfully, Hazard & Apthorp.

"Horace H. Day, Esq., 23 Courtlandt Street, New York."

"New York, 28th, 1865. To Hazard & Apthorp. Your despatch saying you have it, received at noon. Two hours before that, I telegraphed you I would take it only on my first offer. Form contract accordingly. H. H. Day."

"New York, 29, 1865. To Mrs. H. H. Day. Can't take that house yet. Received your letters. Written fully. H. H. Day."

"New York, 29, 1865. To Hazard & Apthorp. Unexpected circumstances prevented my consummating the proposed purchase. Will write mail. H. H. Day."

"No. 23 Courtlandt Street, N. York, June 29, 1865. Gents: I am sorry to say that, since my return to New York, I have been called upon by an estate to pay up a sum of money on a piece of property, which I should lose by failure, and which will consume all my available funds for six months and longer, rendering it impossible for me to make the proposed purchase at this time. [The rest of the letter is omitted.] Very respectfully, your obedient servant, Horace H. Day.

"Messrs. Hazard & Apthorp, Newport, R. I."

"New York, 4 P. M., June 29. Mr. Hazard,—Dear Sir: I have written you this morning; since then, I received copy of your agreement. I regret the necessity which compelled me to decline to take that valuable house, and I shall make a very strong effort to-morrow and Saturday to be in a situation to

change my course. Will you drop in my residence Sunday morning, before church time — the Clark House, Redwood St. ? I leave here for Newport Saturday night. Yours truly, Horace H. Day."

" Newport, R. I., June 30, 1865. My dear Sir: Your two favors of yesterday are received. We had reported the sale to our principals; and have to-day offered the place to Mr. Scott, of Philadelphia, for you, at thirty-six thousand dollars, framed in such a way, however, as not to bind you, if you determine to keep it. Will call on you on Sunday morning, and remain very truly yours, Hazard & Apthorp.

" Horace H. Day, Esq., New York."

" New York, 1st, 1865. To Hazard & Apthorp. Yours received. Assuming all in, upon and about property, goes with it, I expect shall close on arrival. H. H. Day."

The defendant further testified that he returned to Newport on Saturday July 1st, and had an interview with Hazard the next morning, the result of which was that he on that morning signed and delivered a written contract for the purchase of the estate at $35,000, and also signed and delivered the check in suit as part payment. The plaintiffs had, on the Wednesday before, procured the signature of the person representing the owners of the estate to one part of the contract, which part they delivered, duly signed, to the defendant on that morning. This contract, between the administrator for the heirs of Caleb Chace and the defendant, provided that " the said party of the first part, in consideration of the sum of two thousand dollars, to him duly paid, hereby agrees to sell unto the said party of the second part, the Chace House, so called," " together with the stables, and the land, 54,000 feet, more or less, enclosed therewith," " for the sum of thirty-three thousand dollars, which the said party of the second part hereby agrees to pay to the said party of the first part, as follows: Three thousand dollars on signing and delivery of the deed, and thirty thousand dollars in five years from the date thereof, by his notes for thirty thousand dollars secured by mortgage on said premises, made in New York, and bearing seven per cent. interest, payable semi-annually

Hazard & another *v.* D ay.

with the privilege of paying a part or the whole at any time by giving ninety days' notice." There was also provision for the delivery of a sufficient deed to the defendant.

The defendant further testified that early on Monday he gave notice to Hazard that he (the defendant) had found that he had been deceived by the plaintiffs' representations, and would not complete the contract, and should stop the payment of the check; which he did.

The employment of the plaintiffs as real estate brokers, by the owners of the estate, who lived in Boston, was admitted; but there was no direct evidence of any special or express authority to the plaintiffs, from such owners, to receive payment for said estate, in whole or in part, and no evidence to that effect, except such as may be inferred and implied from the fact that they were employed generally as brokers, and did make the preliminary contract, and were intrusted with the duplicate to deliver to the defendant. No evidence was offered showing the extent or limits of the authority of real estate brokers in general. In pursuance of the alleged contract of sale, deeds of the premises from the owners to the defendant were duly tendered to him at Newport, July 28, and by him declined.

The statute laws of Rhode Island, and reports of decisions of its courts, were put in evidence to show the law existing in that state respecting the Lord's day. The Rev. Sts. of Rhode Island, referred to, *c.* 216, § 16, were as follows : " If any person shall do or exercise any labor or business or work of his ordinary calling, or use any game, sport, play or recreation, on the first day of the week, or suffer the same to be done or used by his children, servant or apprentices, works of necessity and charity only excepted, he shall be fined not exceeding five dollars for the first offence, and not exceeding ten dollars for the second offence."

The judge found that the alleged false and fraudulent representations on which the defendant relied were not fully or satisfactorily proved; that the purchase of a dwelling-house for the personal occupation of the defendant and his family, the signing of a contract therefor, and the making and delivery of the check in part payment, were not within the " ordinary calling "

of the defendant, within the meaning of the statute relied upon by him in his defence ; but that the acts of the plaintiffs, in delivering the contract signed by their principal, and in receiving from the defendant the duplicate of the contract and the check signed by him, were acts within their ordinary calling, and were in violation of the aforesaid statute of Rhode Island; and that the various letters and telegraphic messages and other documents and paper writings relied on by the plaintiffs as proofs of a contract entered into, previously to the Sunday in question, between them and the defendant, were not sufficient in law to amount to or prove such alleged contract.

The judge thereupon found for the defendant; and the plaintiffs alleged exceptions.

*S. Bartlett & F. A. Brooks*, for the plaintiffs. The judge ruled that the acts of the defendant, on the Sunday in question, not being in the exercise of his ordinary calling, were not in violation of the statute of Rhode Island. That statute is like *St.* 29 Car. II. *c.* 7, § 1; and the terms "ordinary calling," used therein, are construed in the same way. *Allen* v. *Gardiner*, 7 R. I. 22. The courts of England have been astute upon the question, what one's ordinary calling is. They have even discriminated between parts of a transaction. They have made use of the smallest resources to extricate cases from that statute. *Begbie* v. *Levi*, 1 Cr. & Jerv. 180. *Drury* v. *Defontaine*, 1 Taunt. 131. *Peate* v. *Dicken*, 1 Cr., Mees. & R. 422. *Scarfe* v. *Morgan*, 4 M. & W. 281. *The King* v. *Whitnash*, 7 B. & C. 600.

If the purchase of the estate by the defendant was not in the exercise of his ordinary calling, then of course the sale of it by the owners, who lived in Boston, would not have been within their ordinary callings, if conducted by them personally. If the principals on both sides had met in Newport by appointment on a Sunday and concluded the bargain, it would have been a valid contract. The question then arises whether it is rendered illegal, if the messengers of the vendors, in delivering the contract on Sunday, were in the exercise of their ordinary calling. The delivery is the act of the principal. The channel is of no

importance. The vendors gave no directions that the contract should be delivered on Sunday. The defendant was the only party cognizant of any violation of law. He invited the messengers of the vendors to do this on Sunday, and ought not to be allowed to set up the illegality in defence.

But the check was not received by the plaintiffs in the exercise of their vocation as brokers in real estate. Real estate brokers have no authority to receive money for their principals ; and, *a fortiori*, have no authority to give credit to a purchaser by accepting his check on a distant place. There was no evidence to show this. See *Barnard* v. *Monnot*, 6 Amer. Law Reg. (N. S.) 209 ; *Coleman* v. *Garrigan*, 18 Barb. 67 ; *Mynn* v. *Joliffe*, 1 M. & Rob. 326 ; *Sykes* v. *Giles*, 5 M. & W. 652. The authority of the plaintiffs as brokers ceased when the bargain was closed. The reception of the check was not a brokerage transaction, but was subsequent thereto. Story on Agency, § 109. *Powhatan Steamboat Co.* v. *Appomattox Railroad*, 24 How. 255. *Pidgeon* v. *Burslem*, 3 Exch. 465. The act of receiving the check being unlawful, if done in one character, and not so if done in some other character, the burden of proof was on the defendant to show affirmatively that it was done unlawfully. *Mason* v. *Dinsmore*, 34 Maine, 391. *Batsford* v. *Every*, 44 Barb. 618. *Sanders* v. *Johnson*, 29 Georgia, 526. *Lewis* v. *Davison*, 4 M. & W. 654.

The plaintiffs may recover on the contract concluded by the telegram of June 28. The withdrawal from this contract by the defendant on June 29 was never assented to by the plaintiffs. Although the subject matter is not shown by the telegrams, that may be ascertained from the written contract delivered on Sunday. *Matheson* v. *Ross*, 2 H. L. Cas. 286. *Wheldon* v. *Matthews*, 2 Chit. R. 399. *Holmes* v. *Smith*, 7 Exch. 802. *Dover* v. *Maestaer*, 5 Esp. R. 92. *Shippey* v. *Derrison*, Ib. 190. *Nash* v. *Duncomb*, 1 M. & Rob. 104. *Smart* v. *Nokes*, 7 Scott, N. R. 786. *Dobell* v. *Hutchinson*, 3 Ad. & El. 355. *Gale* v. *Nixon*, 6 Cow. 445.

*W. P. Sheffield* (of Rhode Island) & *J. S. Holmes*, for the defendant.

Gray, J.　It is clear that no contract or memorandum in writing, sufficient to satisfy the statute of frauds, was made before Sunday, the 2d of July.　The despatches which passed by telegraph between the parties on the 27th and 28th of June were insufficient to constitute such a memorandum, because they showed, at most, the terms of payment in part, and a direction from the defendant to the plaintiffs to draw up a contract accordingly, but did not otherwise describe, mention or refer to the subject of the contract.　*Farwell* v. *Mather,* 10 Allen, 322.　*Hodges* v. *Howard,* 5 R. I. 149.　The written contract drawn up by the plaintiffs and sent by them to the defendant on the 28th of June, and containing the defendant's name at the beginning, if within the authority conferred upon them by him, was not prepared for a complete contract or memorandum, but as a form to be afterwards signed by him, and had no effect as a contract or memorandum until so signed.　*Sanborn* v. *Sanborn,* 7 Gray, 142.　*Caton* v. *Caton,* Law Rep. 2 H. L. 127.

On Sunday the 2d of July, the parties met by the defendant's request at Newport in the State of Rhode Island, the defendant signed one part of the contract and delivered it, with the check sued on, to the plaintiffs, and the plaintiffs received the same, and delivered to the defendant the other part of the contract, which had been signed some days before by their principal, the owner of the estate.　Early on Monday morning the defendant gave notice to the plaintiffs that he would not complete the contract, and should stop payment of the check, as he immediately did.　The right of the plaintiffs to recover upon the check so given therefore depends upon the validity of the transactions on Sunday which were the only consideration for the check.

By the law of Rhode Island, as of England and of this commonwealth, a person who has made a contract in violation of the statutes for the observance of the Lord's day cannot main tain an action upon it.　*Allen* v. *Gardiner,* 7 R. I. 24, 25.　*Day* v *McAllister,* 15 Gray, 433.　Metcalf on Con. 255–258.　The stat ute of Rhode Island, like our own earlier statutes, is taken from the English *St.* of 29 Car. II. *c.* 7, § 1, and does not, like our

present statute, prohibit any one from doing on the Lord's day, without necessity or charity, " any manner of labor, business or work," but only " any labor or business or work of his ordinary calling." *Bennett* v. *Brooks*, 9 Allen, 119. Business not within one's ordinary calling is not made unlawful by the statute of Rhode Island ; and it was ruled by the judge presiding in the superior court, rightly, we have no doubt, that the purchase of a dwelling-house for the personal occupation of the defendant and his family, the signing of a contract therefor, and the making and delivery of a check in part payment, were not within the ordinary calling of the defendant, in the sense of this statute.

It has been argued for the plaintiffs that it is no part of the ordinary calling of a broker to receive payment for land sold by him, still less to receive such payment by check, and that the acts done by the plaintiffs on Sunday were not therefore within their ordinary calling. But this argument proceeds upon too narrow a construction of the words of the statute, as applied to the evidence in this case. It appeared that the plaintiffs were real estate brokers, and were employed as such by the owner of the estate in question, made the contract for the sale, and were intrusted, for the purpose of delivering it, with one part of the contract, signed by their principal, and stating the amount named in this check to have been duly paid. This evidence would warrant the inference of fact that they were authorized by their principal to deliver the contract and receive payment. This court has no more power, upon a bill of exceptions, to revise in matter of fact the finding of the judge to whom by the waiver of a trial by jury the case has been submitted in the court below, than the verdict of a jury. Gen. Sts. *c.* 129, §§ 66, 67. It is as much a part of the ordinary calling of a broker to receive and carry out the special instructions of his principal in relation to property which he is employed to sell, as it is to do whatever is embraced in the general authority arising out of his employment as a broker. The special instructions and the general authority are both given to him as a broker and according to the ordinary mode of conducting his business. It is immaterial whether the plaintiffs had or had not authority to receive

payment by check; for whether they sue upon the check itself, or for an equal amount of money as not having been paid according to the contract, the only consideration of the promise declared on is the delivery of a contract by an act within their ordinary calling, and so within the prohibition of the statute. To say, as suggested in behalf of the plaintiffs, that a contract should not be held void if made through an agent, which would have been valid if made by the owner of the estate in person, would leave professional agents free to pursue their ordinary callings on the Lord's day. A broker or factor is commonly employed to do something which is not within the ordinary calling of his principal, but is within his own ordinary calling. A man who follows his ordinary calling as agent for others is not less within the words of the statute, or the evils which it was intended to prevent, than one who follows his ordinary calling on his own account. The fact that the parties to this action met on the Lord's day at the defendant's request, does not estop him to set up this defence. The plaintiffs in meeting the defendant on that day were in equal fault with the defendant who requested them so to meet him; indeed more in fault, inasmuch as dealing in real estate was their ordinary calling, and was not his, and the plaintiffs were therefore acting in direct violation of the statute. *Fennell* v. *Ridler*, 8 D. & R. 204; *S. C.* 5 B. & C. 406. *Smith* v. *Sparrow*, 12 Moore, 266; *S. C.* 4 Bing. 84; 2 C. & P. 544.

In the only reported case in Rhode Island upon this subject, the delivery of a release by a creditor to an assignee under a voluntary assignment was held not to be within the statute for the reason that it was, in the words of the court, " an act out of and beyond the sphere of his ordinary business, as was the assignment itself which required it." *Allen* v. *Gardiner*, 7 R. I. 22.                                        *Exceptions overruled.*